UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TROY COLLIER

    Plaintiff,

  v.

WINDSOR FIRE PROTECTION DISTRICT BOARD OF DIRECTORS, et al.,

    Defendants.

_____/

No. C 08-2582 PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## BACKGROUND

This is the second motion for summary judgment brought by defendants. By order dated September 9, 2010, the Honorable Vaughn R. Walker declined to rule on defendants' first motion for summary judgment and sua sponte granted summary judgment in favor of plaintiff on his procedural due process claim. The court ordered an evidentiary hearing on the procedural due process claim, and the parties appeared for arbitration before Justice Morrison (retired), who found no procedural due process violation. The case has since been reassigned to the undersigned judge, and defendants now seek summary judgment on the remaining claims.

**A.**    **Relevant Facts**

Plaintiff Troy Collier was employed by the Windsor Fire Protection District ("District"), beginning as a volunteer firefighter at age 18, then hired full-time in 1991 and later promoted to fire captain. Doc. no. 72 ("Biggs Decl."), Ex. 1 at 19 (Arbitration Transcript). The District terminated plaintiff from his position as captain on March 27, 2007. Prior to his termination, plaintiff's employment relationship was governed by a Memorandum of Understanding ("MOU"), which plaintiff negotiated on behalf of the labor union. The MOU

provides that District employees can only be terminated for cause and, as public employees, through constitutionally guaranteed process.

### 1. February 24, 2007 Incident

The events giving rise to plaintiff's termination occurred following the Windsor Volunteer Firefighters' Association awards dinner on February 24, 2007. Biggs Decl., Ex. 3 at 72 (Pl's Depo.). The awards dinner, held at Charlie's restaurant, was a District related event and alcohol was served there. Id., Ex. 2, RFA nos. 13, 15. The dinner and ceremony ended at approximately 10:00 p.m. Id., Ex. 1 at 31 (arbitration hearing transcript). Plaintiff was with a group of people who stayed at Charlie's for about an hour after the event ended and continued to drink alcohol. Id. at 34. Plaintiff, Captain Ron Busch and about ten other guests shared a limousine from Charlie's, and all but one couple agreed to go to a pub, Patterson's. Id. at 39. Many people consumed alcohol in the limousine, which had a cooler of beer and a supply of hard liquor. Id. at 39, 41. At least two people, including Captain Busch, vomited on the way to the pub. Id. at 39, 43.

Plaintiff Collier admits that he was "extremely intoxicated" on the night of February 24, 2007. Doc. no. 70 ("Gorham Decl."), Ex. A, RFA no. 9. After making a roadside stop on the way to the pub, Captain Busch's wife, Donna, was seated in the limousine to plaintiff's right and testified that plaintiff had his arm around her and grabbed her breast a few times. Id., Ex. B at 130. Mrs. Busch tried to turn away from plaintiff, and mouthed the word "help" to her husband who was sitting across from her. Id. at 131. Captain Busch was sitting in the back of the limo on a bench seat on the driver's side and his wife was seated in the rear of the limo. Id. at 166. She then said outloud, "Can you get him off of me?" Id. One witness overheard Deon Collier, plaintiff's wife, say to Captain Busch, "are you going to stay up front while my husband rapes your wife?" Id., Ex. C at 15-16. That witness did not see any inappropriate touching. Id. at 16.

It is undisputed that Captain Busch physically intervened, that a physical altercation between him and plaintiff ensued in the limousine, and that Captain Busch bit plaintiff's finger when plaintiff put his hand in Captain Busch's face. Gorham Decl., Ex. B at 166-68.

The limousine pulled over at the parking lot of the Exchange Bank and plaintiff admittedly confronted Captain Busch outside of the limousine. Id., Ex. D at 109-110. Plaintiff does not remember throwing a punch, but Captain Busch testified that plaintiff punched him. Id., Ex. D at 112; Biggs Decl., Ex. 1 at 169.

Captain Busch and Donna Busch testified that they did not want to make a big issue of the incident because plaintiff's father, Ron Collier, was and is the District's Fire Chief and Donna Busch indicated that she was concerned about jeopardizing Captain Busch's career. Gorham Decl., Ex. B at 154-55, 194-95. The District learned of the incident when the Windsor Chief of Police Freitas called Fire Chief Ron Collier the next day to report that the police had to break up a fight involving two of his fire captains. Gorham Decl., Ex. E at 16-17. The police chief explained that he would be required to report the matter to the Windsor city manager and city council. Id. Chief Collier met both battalion chiefs Giordani and Gustafson about the need for an investigation and told them, out of anger, that he wanted both plaintiff and Busch fired. Id. at 17-19. Chief Collier recused himself from the investigation and charged defendants Giordani and Gustafson with determining the action to be taken in light of the incident. Id. at 21.

After learning of the incident, the District asked its general counsel, William Arnone, Esq. to conduct the investigation, and he hired a professional investigator, Gary Barner, to interview the parties and the witnesses. Gorham Decl., Ex. C at 12-13, 44-45 and Ex. G at 16-17. Barner interviewed all cooperative witnesses and prepared a report. Doc. no. 3 ("FAC"), Ex. 7 (Preliminary Report); Gorham Decl., Ex. A, RFA no. 15. In the meantime, plaintiff was placed on paid administrative leave. FAC, Ex. 2. Defendants represent that Captain Busch was also placed on administrative leave. Doc. no. 69 at 10.

**2.   Skelly Hearing and Termination**

After reviewing Barner's report, defendants Giordani and Gustafson concluded that plaintiff should be terminated for violating District policies. Gorham Decl., Ex. H at 26 and Ex. I at 32-33, 35. On March 15, 2007, Gustafson issued to plaintiff a notice of intended discipline for violation of the District's standards of conduct. FAC, Ex. 4. The notice was

1  based on evidence of "inappropriate physical contact with Donna Busch inside the
2  limousine, and [plaintiff's] escalation of the confrontation with Captain Ron Busch outside of
3  the limousine into a fist fight at the Exchange Bank parking lot."  Id.  The notice references
4  paragraph VI.D.1. of the Administrative Manual, "which provides that 'the District strictly
5  prohibits employees . . . engaging in a District-related activity from behaving in a violent or
6  threatening manner,' and SOG #A-3 of the Standard Operating Procedures, which requires
7  that employees 'shall adhere to the highest standards of conduct' and establishes that
8  unacceptable improper conduct includes, 'Any comment or action which a reasonable
9  person would find offensive.  Any . . . harassment . . . [and] Fighting or threatening other
10 employees. . . .'"  Id.

11 On March 22, 2007, defendants Gustafson and Giordani conducted a pre-
12 termination hearing pursuant to Skelly v. State Personnel Board, 15 Cal. 3d 194 (1975).
13 Plaintiff was represented by counsel at the Skelly hearing.  Gorham Decl., Ex. A, RFA no.
14 24.  On March 27, 2007, the District notified plaintiff that it was terminating his employment.
15 FAC, Ex. 5.  The notice of termination indicated that the termination decision was based on
16 information in the Barner report and Gustafson's "familiarity with [plaintiff's] past
17 performance problems relating to people skills."  Id.

18 **3.     Non-binding Arbitration**

19 Post termination process followed pursuant to the MOU.  Plaintiff appealed directly
20 to the District Board of Directors on May 16, 2007.  The District's Board upheld the decision
21 to terminate plaintiff.  Gorham Decl., Ex. J. at 79-80.

22 Following this direct appeal, plaintiff Collier availed himself of non-binding arbitration
23 proceedings which were held on two days, November 20, 2007, and January 15, 2008,
24 before Thomas L. Hodges, Esq.  See Gorham Decl., Exs. B and I.  Witnesses were called
25 and the proceedings were transcribed.  At arbitration, the District raised the issue that
26 plaintiff's conduct violated SOG #A-23, which establishes a policy regarding "alcohol
27 use/consumption."  The arbitrator determined that the District did not charge plaintiff with
28 this violation in the notice of intended discipline.  FAC, Ex. 6 at 7.

4

In an advisory opinion dated April 7, 2008, arbitrator Hodges concluded that plaintiff had been wrongfully terminated because the District had no jurisdiction over this off-duty event and that it deprived plaintiff of due process because he was not apprised in the notice of intended termination that "past performance issues" were a basis of his termination before his Skelly hearing. FAC, Ex. 6 at 5-6. Hodges concluded that plaintiff should be reinstated to his position with back pay or, in the alternative, that the District settle plaintiff's potential claims for wrongful termination. Id. at 8. Nevertheless, the District's Board upheld the termination of plaintiff because it concluded that his conduct on February 24, 2007, justified termination and did not agree that the matter was not subject to discipline. Gorham Decl., Ex. J at 47-50. In particular, the Board disagreed with Hodges' conclusion that plaintiff's conduct "did not occur on 'district premises,' that is on any district facility such as a fire station, maintenance yard, administration offices, et cetera," on the ground that plaintiff was engaging in a district-related activity. Id. at 49-50; FAC, Ex. 6 at 5.

**B.  Procedural History**

Plaintiff filed this action on May 21, 2008 and filed an amended complaint on June 30, 2008 against defendants Windsor Fire Protection District Board of Directors, Fire Chief Ronald Collier in his official capacity, and Battalion Chiefs Matt Gustafson and Joe Giordani in their individual and official capacities. The amended complaint alleged twelve causes of action relating to the termination of his employment.

By order dated September 30, 2009, the court granted in part defendants' motion to dismiss the claims of the amended complaint. On defendants' subsequent motion for summary judgment, only the following claims remained: violations of procedural due process for property interest (first cause of action), substantive due process (second cause of action), and procedural due process for liberty interest (fifth cause of action), and breach of contract (ninth cause of action). By order dated September 9, 2010, the court found, sua sponte, that the District did not provide proper procedural process because it did not state all grounds for plaintiff's termination in the notice of termination and granted summary judgment in favor of plaintiff with respect to his first cause of action against the District.

Doc. no. 56 at 8-10. Following <u>Levine v. City of Alameda</u>, 2006 WL 83051 (N.D. Cal. Jan. 12, 2006), <u>aff'd</u>, 525 F.3d 903 (9th Cir. 2008), the court ordered a further evidentiary hearing before a third-party neutral arbitrator to determine whether plaintiff was justifiably terminated. Doc. no. 56 at 10-11. The court dismissed Fire Chief Collier from the action, dismissed defendants Giordani and Gustafson from the first cause of action, and declined to rule on defendants' motion for summary judgment as to plaintiff's second, fifth and ninth claims. <u>See</u> doc. no. 56. The court further ordered defendants to file the precise grounds for plaintiff's termination. <u>Id</u>. at 11.

Defendants submitted the grounds for termination on November 1, 2010, as follows:

1) violation of standard operating guideline ("SOG") #A-3 ¶ 7 defining unacceptable "improper conduct" to include "Fighting or threatening other employees, supervisors or customers."

2) violation of SOG #A-23 ¶ 5:

   The fire district respects the privacy of its off-duty employees; however, as sworn public servants, alcohol-related behavior that is unlawful or unbecoming results in reduced public trust and tarnishes the professional image of the men and women of the fire district (and the fire service in general). Any such behavior by off-duty district employees may result in disciplinary action.

3) violation of District Administrative Manual Standards of Conduct VI.B.2.a.ii:

   2. Statement of Prohibited Conduct
      Sexual harassment is unlawful and hurts other employees. Moreover, each incident of harassment contributes to a general atmosphere in which all persons who share the victim's sex suffer the consequences. Sexually oriented acts or sex-based conduct have no legitimate business purposes. Accordingly, the employee who engages in that conduct should be and will be made to bear the full responsibility for that unlawful conduct. The District's management considers the following conduct to be illustrative of some of the conduct that violates the District's Sexual Harassment Policy. The

6

illustrations stated below are not to be construed as an all-inclusive list of prohibited acts under this Policy:

    a.    Physical assaults of a sexual nature, such as:

        . . .

        ii.    Intentional physical conduct that is sexual in nature, such as touching, pinching, patting, grabbing, brushing against another employee's body, or poking another employee's body.

    b.    Unwanted sexual advances . . . .

4)    violation of Standard of Conduct VI.D:

D.    Workplace Violence

    1.    General Policy

    The District recognizes that workplace violence is a growing concern among employers and employees across the country.  The District is, therefore, committed to providing a safe, violence-free workplace.  In this regard, the District strictly prohibits employees, consultants, customers, visitors, or anyone else on District premises or engaging in a District-related activity from behaving in a violent or threatening manner.  Moreover, as part of this policy, the District seeks to prevent workplace violence before it begins and reserves the right to deal with behavior that suggests a propensity towards violence even prior to any violent behavior occurring.

    2.    Workplace Violence Defined

        a.    Threatening, physically aggressive or violent behavior, such as intimidation of or attempts to instill fear in others . . . .

5.    violation of Standard of Conduct VI.G.2.b:

2.    Prohibited Conduct

No employee or volunteer shall:

    b.    Drink an alcoholic beverage to the extent that the employee is unfit to report for the next regular tour of duty or respond to a call, or which results in the commission of any act which discredits the District.

7

Doc. no. 58; Gorham Decl., Exs. P, Q, R.

Beginning November 16, 2010, the parties participated in a three-day Evidentiary Hearing with The Honorable Fred Morrison (Ret.) presiding. Doc. no. 59. Testifying at the hearing were plaintiff, Donna Busch, Captain Busch, Deon Collier, Chief Collier, James McDowell (President of the Board of Directors of the District), and defendants Gustafson and Giordani. Id. at 6. Justice Morrison (Ret.) determined that the District justifiably terminated plaintiff. Id.

This action was reassigned to the undersigned on January 31, 2011. Defendants filed the instant motion on June 1, 2011. Defendants move for summary judgment with respect to all remaining claims against defendants District, Gustafson and Giordani:

    i.    deprivation of procedural due process in a protected property interest in violation of § 1983 (first cause of action against District),

    ii.    deprivation of substantive due process right in violation of § 1983 (second cause of action against all defendants),

    iii.    deprivation of procedural due process right in a protected liberty interest in violation of § 1983 (fifth cause of action against all defendants), and

    iv.    breach of employment agreement (ninth cause of action against District).

## DISCUSSION

### A. Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery

responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

**B.     Analysis**

   **1.     First Cause of Action: procedural due process**

Plaintiff's first cause of action alleges that the District violated plaintiff's procedural due process rights. Violations of the due process clause of the Fourteenth Amendment are properly advanced under 42 U.S.C. § 1983. Collins v. City of Parker Heights, Texas, 503 U.S. 115, 199-200 (1992). To establish a due process claim under section 1983, plaintiff must show that a person acting under the color of state law deprived him of a right, privilege or immunity protected by the Constitution or federal law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). In evaluating a due process claim, courts consider first whether plaintiff has demonstrated that he had a legitimate liberty or property interest that was deprived by the governmental actor, Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972), and if so, whether the procedures attendant upon that deprivation were constitutionally sufficient, Kentucky Dept of Corrections v. Thompson, 490 U.S. 454, 460 (1989).

In sua sponte granting summary judgment on plaintiff's first claim for relief, the court determined that the District had violated plaintiff's procedural due process rights by depriving plaintiff of a property interest in continued employment and that plaintiff was not

9

properly notified of all the charges against him. Doc. no. 56 at 7-8. The court therefore ordered that the parties proceed before a third-party neutral to conduct an evidentiary hearing and required defendants to file the precise grounds for termination. Id. at 11. An evidentiary hearing having been conducted, as ordered by the court, the District has cured the procedural due process violation. Levine, 525 F.3d at 905-06.

Defendants argue that the court ordered the proper remedy for a procedural due process violation, and there is nothing left of the procedural due process claim. Defendants argue that plaintiff cannot recover any damages because he was justifiably terminated for his conduct, and there is no actual injury apart from the termination. Doc. no. 74 at 3.

Plaintiff argues that the procedural remedy does not dispose of plaintiff's claim for backpay through the date of the court-ordered hearing in November 2010, citing Roe v. State Personnel Bd., 120 Cal. App. 4th 1029, 1042 (2004). In Roe, the court of appeal held that the plaintiff was terminated without due process and was entitled to backpay through the date of the Personnel Board's decision after hearings on the merits of the charges against him. 120 Cal. App. 4th at 1032-33. The court of appeal directed the superior court to remand the matter to the Personnel Board with directions "to conduct proceedings to determine the amount of backpay due Roe for the Skelly violation for the period September 1, 1992, through May 5, 1999, and to award it forthwith. Further, as the Board has already heard the evidence on the merits, the superior court shall direct the Board to exercise its discretion and make a finding whether Roe's dismissal was for good cause." 120 Cal. App. 4th at 1043. Defendants here contend that Roe appears at odds with Levine, but Levine did not hold that the procedural cure was the exclusive remedy for a procedural due process claim. Rather, Levine upheld the district court's finding that the employee's due process rights were violated and that the district court properly ordered a full evidentiary hearing to remedy the violation. 525 F.3d at 906.

The appropriate remedy for deprivation of a property interest without due process "is to order the process that was due and any attendant damages which directly resulted from the failure to give the proper procedure." Brady v. Gebbie, 859 F.2d 1543, 1551 (9th Cir.

10

1988). Under California law, the appropriate remedy for termination without being afforded Skelly procedural protections is an award of backpay from the date of dismissal until the date of correction of the constitutional infirmity. Roe, 120 Cal. App. 4th at 1039 (citing Barber v. State Personnel Board, 18 Cal.3d 395, 403 (1976)). Defendants contend that plaintiff is not entitled to any backpay award because the arbitrator ultimately upheld the termination. Plaintiff argues, however, that under Roe, an employee who does not receive the required process is entitled to backpay from the date of termination, March 27, 2007, to the date that the termination was sustained in the post-termination proceeding, which, in this case, was December 22, 2010 when Justice Morrison issued his advisory opinion. The court agrees with both positions. If the termination is ultimately upheld, backpay will not be awarded as no damages will have been incurred. However, if the termination is not upheld, backpay will be awarded as appropriate. Because the court denies defendants' motion for summary judgment on the question of just cause for termination, infra, the court denies without prejudice defendants' motion for summary judgment with respect to plaintiff's claim for backpay. As plaintiff has not moved for summary judgment, the amount of damages on plaintiff's first cause of action is a factual issue reserved for trial.

**2.   Second Cause of Action: substantive due process**

Plaintiff's second cause of action asserts a § 1983 claim based on the allegations that defendants District, Giordani and Gustafson violated his right to substantive due process by depriving him of a protected property interest in continued employment. Defendants mistakenly contend that plaintiff conceded this cause of action in his opposition, when plaintiff was actually arguing that "Defendant concedes its Second Claim for Violation of Substantive Due Process." Doc. no. 71 at 12.

Plaintiff argues that he has a protected liberty interest in pursuing his chosen profession and contends that his substantive due process claim is properly asserted "if he is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." Doc. no. 71 at 14 (citing Sagana v. Tenorio, 384 F.3d 731 (9th Cir. 2004)). In Sagana, the court of appeals recognized that the

11

1  Supreme Court "has never held that the right to pursue work is a fundamental right." 384
2  F.3d at 743. As the Ninth Circuit recognized in Guzman v. Shewry, 552 F.3d 941 (9th Cir.
3  2009):

> The Supreme Court has not defined the boundaries of an individual's right to pursue his chosen profession, but it has stated that there is "some generalized due process right to choose one's field of private employment." Conn v. Gabbert, 526 U.S. 286, 291-92 (1999). The Court has emphasized, however, that all cases recognizing such a right have "deal[t] with a **complete prohibition** on the right to engage in a calling, and not [a] sort of brief interruption." Id. at 292 [emphasis added in original]. Indeed, the liberty interest in pursuing one's chosen profession has been recognized only in cases where (1) a plaintiff challenges the rationality of government regulations on entry into a particular profession, see, e.g., Schware v. Bd. of Bar Exam'rs, 353 U.S. 232 (1957), or (2) a state seeks permanently to bar an individual from public employment, see, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972).

Guzman, 552 F.3d at 954.

The Ninth Circuit has recognized the liberty interest in pursuing an occupation of one's choice, see Dittman v. Cal., 191 F.3d 1020, 1029-30 (9th Cir.1999), but has limited substantive due process claims for a public employer's violations of occupational liberty to "extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" Engquist v. Oregon Dept. of Agriculture, 478 F.3d 985, 998 (9th Cir. 2007), aff'd on other grounds, 553 U.S. 591 (2008).

In opposition to defendants' motion for summary judgment on the substantive due process claim, plaintiff argues that the District's decision to terminate him was arbitrary because the District charged plaintiff with violating SOG #A-23 for "alcohol-related behavior that is unlawful or unbecoming," yet the District itself violated the provision of SOG #A-23 by failing to have a chief officer authorize alcohol consumption at a District-related event.

12

1  Doc. no. 71 at 14.  See Gorham Decl., Ex. R [SOG #A-23] ¶ 6 ("No alcohol can be
2  consumed, carried or handled in any district vehicle or property without the permission of
3  the Fire Chief or, in the Fire Chief's absence, other chief officer.").  Plaintiff offers evidence
4  in the record that the District did not authorize its employees to consume alcohol in the
5  limousine after leaving the awards dinner.  Biggs Decl., Ex. 4 RFA no. 29.

Plaintiff offers evidence to show that he had no record of adverse disciplinary actions before the February 24, 2007 incident, that there was unauthorized alcohol consumption in the limousine ride following a District-related event, and that he has applied for at least 186 firefighter jobs and has not received a single job offer.  See doc. no. 73 ("Collier Decl.") ¶¶ 16,19.  Plaintiff represents that the only negative information in his background is his termination from the District.  Id. ¶ 21.  These facts fail to establish that the District has circulated a blacklist, made defamatory comments about plaintiff, or otherwise foreclosed plaintiff from pursuing a profession so as to amount to a substantive due process violation under Engquist.  Defendants' motion for summary judgment as to plaintiff's substantive due process claim is therefore GRANTED.

### 3. Fifth Cause of Action: deprivation of liberty interest without due process

Plaintiff alleges a procedural due process claim against the District, Gustafson and Giordani for deprivation of his liberty interest in seeking employment in his profession as a firefighter.  Generally, a procedural due process claim must establish "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir.2002) (citation and quotation marks omitted).

As discussed above, plaintiff has a protected liberty interest in pursuing an occupation of his choice.  Dittman, 191 F.3d at 1029-30 (upholding state law imposing conditions on acupuncture licenses).  In Portman v. Co. of Santa Clara, the Ninth Circuit recognized that the liberty interest protected by the due process clause "encompasses an individual's freedom to work and earn a living."  Portman, 995 F.2d 898, 904 (9th Cir. 1993)

13

(citing Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1100 (9th Cir.1981)). Portman further held as follows:

> [W]hen the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name. [Citation omitted.] To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to 'stigmatize' or otherwise burden the individual so that he is not able to take advantage of other employment opportunities. [Citation omitted.] Moreover, to infringe upon a constitutionally protected liberty interest, the charges must be published. Bishop v. Wood, 426 U.S. 341 (1976).
>
> "Charges that carry the stigma of moral turpitude" such as dishonesty or immorality "may implicate a liberty interest, but charges of incompetence or inability to get along with others do not." Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir.1991). . . .
>
> "Allegations that exclude a person permanently from a profession" may also infringe a constitutionally protected liberty interest, even if they do not rise to the level of moral turpitude. [Roley v. Pierce County Fire Protection District No. 4, 869 F.2d 491, 496 (9th Cir.1989).]

Portman, 995 F.2d at 907. In Roley, the court of appeals distinguished between "allegations that may reduce economic rewards and diminish prestige from those that may exclude one permanently from the profession or trade or interrupt employment for a protracted period of time. Allegations that reduce economic rewards do not warrant constitutional procedural protection." 869 F.2d at 496 (citing Roth v. Veteran's Admin. of Gov't of U.S., 856 F.2d 1401, 1411 (9th Cir.1988)).

Defendants argue that plaintiff has not established a protected liberty interest because the statements about workplace violence do not involve moral turpitude and do not foreclose his freedom to take advantage of other employment opportunities. Doc. no. 69 at 18. Plaintiff contends that the allegations of violence and sexual battery supporting his termination rise to the level of moral turpitude or otherwise stigmatize his reputation.

14

Doc. no. 71 at 14.  Viewing the evidence in the light most favorable to plaintiff, the court assumes for purposes of this motion that the accusations of workplace violence and sexual battery could impose a stigma on plaintiff's reputation so as to implicate a liberty interest. Further, the record demonstrates that some of the allegations against plaintiff were published in a local newspaper, The Press Democrat.  Gorham Decl., Ex. F.  The article cited "a report by the Windsor Police Department."  Id.  There is no evidence, however, that either of the individual defendants, Gustafson and Giordani, made any public statements about plaintiff's termination.

Assuming that a liberty interest has been implicated, on this record, plaintiff fails to demonstrate that there is a genuine issue of fact as to whether he had notice and the opportunity to clear his name.  See Codd v. Velger, 429 U.S. 624, 627 (1977) ("the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge'").  Plaintiff appeared with counsel at his pre-termination hearing in March 2007, the post-termination arbitration hearings in November 2007 and January 2008, and the court-ordered arbitration hearings in November 2010.  Plaintiff makes no argument to demonstrate that these procedures were deficient.  The court therefore GRANTS defendants' motion for summary judgment on plaintiff's fifth cause of action alleging a procedural due process violation for deprivation of liberty interest.

**4.      Ninth Cause of Action: breach of contract**

Plaintiff asserts one remaining state law claim against the District for breach of the employment agreement under the MOU which, the parties agree, provides that plaintiff could only be discharged for just cause.  FAC, Ex. 1.  See doc. no. 69 at 19.  The parties dispute the standard for just cause to be applied here.

The District contends that under California law, an employer has good cause to terminate an employee if it has "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual."  Incalza v. Fendi North America, Inc., 479 F.3d 1005, 1013 (9th Cir.

15

2007) (quoting Cotran v. Rollins Hudig Hall Int'l, 17 Cal.4th 93 (1998)).  Cotran explained the objective good faith standard as follows:

> The proper inquiry for the jury, in other words, is not, "Did the employee in fact commit the act leading to dismissal?" It is, "Was the factual basis on which the employer concluded a dischargeable act had been committed reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual?" The jury conducts a factual inquiry in both cases, but the questions are not the same.  In the first, the jury decides the ultimate truth of the employee's alleged misconduct.  In the second, it focuses on the employer's response to allegations of misconduct.

Cotran, 17 Cal.4th at 108.

Plaintiff, however, contends that Cotran applies to private, not public, sector employment. Doc. no. 71 at 15.  Plaintiff cites Blake v. State Personnel Bd., 25 Cal.App.3d 541 (1972) as setting the applicable standard for state civil service employees, although he concedes that District employees are not employees of the state of California.  Doc. no. 71 at 20.  In Blake, the court reviewed the termination of a state employee for off-duty misconduct pursuant to California Government Code, section 19572 which governs discourteous treatment of other employees (subsection (m)).  Blake held misbehavior toward other employees outside of duty hours could form the basis of disciplinary action if it "bears some rational relationship to the employment and is of a character that can reasonably result in the impairment or disruption of public service." 25 Cal.App.3d at 550. Finding that the State Personnel Board's factual determinations were supported by substantial evidence in Blake, the court upheld the Board's findings that the off-duty misconduct had "a deleterious effect upon public service" in violation of section 19572(m).

Under either Cotran or Blake, the court must determine whether the termination decision was supported by "substantial evidence." See Cotran, 17 Cal.4th at 108. Because plaintiff alleges a state law breach of contract claim and does not allege that he

was a state employee terminated pursuant to section 19572, the court proceeds under the standard set forth in Cotran, rather than Blake, for purposes of the present motion.[1]

Plaintiff further contends that even if Cotran does state the controlling standard, then defendants' motion for summary judgment should be denied because the good faith question articulated in Cotran, i.e., whether the employer made a "reasoned conclusion . . . supported by substantial evidence gathered through an adequate investigation," invokes genuine issues of material fact. Doc. no. 71 at 17 (citing Cotran, 17 Cal.4th at 108). Plaintiff contends that the District hired an investigator to collect facts, but did not fully utilize the investigator's report and investigation prior to making the decision to terminate plaintiff. The investigator hired by Bill Arnone, retired police captain Barner, testified that he was hired to simply interview the witnesses about the incident from the time of departing the awards dinner to the end of the conflict in the Exchange Bank parking lot. Biggs Decl., Ex. 5 at 152-53. Barner testified that some witnesses had difficulty seeing the events because it was dark, had difficulty hearing, and admitted to having been drinking alcohol. Id. at 156. Barner agreed that it was possible that plaintiff's arm may have been on the back of the seat behind Donna Busch and that Captain Busch was drunk and mistakenly thought that plaintiff was groping his wife. Id. at 163-64. Defendant Gustafson testified that he did not read any written witness statements and listened only to the audio interview of Donna Busch. Biggs Decl., Ex. 7 at 40-41. Defendant Giordani relied on Barner's preliminary report in terminating Collier and only reviewed information on witness statements that they were interested in, listened to the audio interview of Donna Busch and perhaps one other taped interview, and did not want to listen to more statements because he felt he had enough information. Biggs Decl., Ex. 8 at 15-16. Plaintiff contends that Gustafson and Giordani failed to utilize fully the investigator's data and that there is a

---

[1] Even if the court were to apply the standard set forth in Blake, the court fails to appreciate how plaintiff would benefit from application of Blake, which extended the statutory provision governing discipline for "discourteous treatment" of other employees to off-duty misconduct. 25 Cal.App.3d at 550-51.

triable issue of fact as to whether the termination was supported by substantial evidence and reasonably believed by the employer to be true. Doc. no. 71 at 17-18.

Defendants contend that they relied upon the facts developed through the third-party investigation conducted by Barner and that plaintiff has not identified inaccuracies or incomplete areas of investigation. Doc. no. 69 at 20-21. Defendants further point to evidence in the record that Gustafson and Giordani considered other remedies, did not want to terminate anyone, and agonized about the decision whether to terminate plaintiff. Gorham Decl., Ex. N at 546, 549-50 and Ex. O at 618-19, 634, 722, 745.

Following the investigation conducted by Barner, the District determined, among other things, that plaintiff groped Donna Busch's breast in the limousine departing the awards dinner and then outside of the limousine, punched Captain Busch. Doc. no. 58 at 2. The District further determined that plaintiff's conduct violated SOG #A-23, which recognizes that alcohol-related behavior by District employees that is "unlawful or unbecoming" results in "reduced public trust and tarnishes the professional image of the men and women of the fire district (and the fire service in general)." Id. Plaintiff suggests that the alleged fistfight in the Exchange Bank parking lot was an act of self-defense, raising a credibility issue, and that he did not violate SOG #A-23. Plaintiff also raises a factual dispute whether the incident was district-related or occurred in the workplace. See doc. no. 71 at 10-11, 18-25.

As the Ninth Circuit recognized in Incalza, the court need not determine whether plaintiff actually committed the misconduct that led to his dismissal, but only whether the factual basis on which defendants concluded that a dischargeable act had been committed was reached honestly. 479 F.3d at 1013 (citing Cotran, 17 Cal. 4th at 108). The court agrees with plaintiff that there are triable issues of fact as to whether the investigation was fair and conducted in good faith, particularly in light of Chief Collier's statement that he wanted both plaintiff and Captain Busch fired, but only plaintiff was terminated. The District's motion for summary judgment on plaintiff's ninth cause of action for breach of contract is therefore DENIED.

### 5. Qualified Immunity

Defendants contend that Gustafson and Giordani are entitled to qualified immunity. Having granted summary judgment on the second (substantive due process) and fifth (procedural due process/liberty interest) causes of action against all defendants, the court finds that the question of whether Gustafson and Giordani are entitled to qualified immunity is moot. The first cause of action for backpay (procedural due process/property interest) and ninth cause of action (breach of contract) only remain against the District, so that qualified immunity is not at issue.

### 6. Punitive Damages Allegations

Defendants contend that punitive damages are not available under § 1983 against the District because government entities are immune from liability for punitive damages under § 1983. Doc. no. 69 at 28 (citing City of Newport v. Facet Concerts, Inc., 453 U.S. 247, 271 (1981)). Further, defendants contend that punitive damages are not available on the breach of contract claim against the District. Id. (citing Cal. Gov't Code § 818 ("Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant.").

Plaintiff does not dispute that the District is not subject to punitive damages, but contends that Gustafson and Giordani are liable for punitive damages. Doc. no. 71 at 27. Having determined that no claims survive against the individual defendants, the court hereby GRANTS defendants' motion for summary judgment as to plaintiff's claim for punitive damages.

### CONCLUSION

For the reasons set forth above, the court orders as follows:

1. Defendants' motion for summary judgment as to plaintiff's first cause of action against the District for backpay damages for violation of procedural due process rights and ninth cause of action against the District for breach of contract is DENIED.

2. Defendants' motion for summary judgment is GRANTED as to plaintiff's remaining claims: second cause of action against all defendants for substantive due process violation, fifth cause of action against all defendants for deprivation of liberty interest in violation of procedural due process rights, and punitive damages.

3. The parties are ordered to attend a mandatory settlement conference and, if the case does not settle, a further case management conference for the purpose of scheduling the trial. A separate order will issue as to these two events.

**IT IS SO ORDERED.**

Dated: October 6, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge